# *Law Offices of*
# *Daniel A. Hochheiser*

ATTORNEY AT LAW
2 Overhill Road, Suite 400
Scarsdale, New York 10583
dah@hochheiser.com
(646) 863-4246

January 4, 2023

Hon. Philip M. Halpern
Southern District of New York
United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

Re:  *USA v. Darondae Ramseur*, 21 CR 779 (PMH)
     <u>SENTENCE MEMORANDUM</u>

Your Honor:

### I.  DEFENSE SENTENCE REQUEST

Ramseur requests a sentence of less than 37 months, three years of supervised release, and a $100 special assessment. Such a sentence would constitute a sentence "sufficient but not greater than necessary" to satisfy the purposes of sentencing. 18 USC §3553(a). A sentence of less than 37 months would: (i) be a sentence appropriate to the crime of conviction which does not carry a mandatory minimum sentence [18 U.S.C. §922(g)(1)], (ii) account for the significant mitigating factors, and (iii) satisfy the purposes of sentencing which are: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. §3553(a)(2).

### II.  BACKGROUND

Ramseur was three years old when his thirteen-year-old sister Tyisha McCoy was murdered. *See*, "Two Charged in Death of Girl Who Wrote of Grim Life" New York Times 7/8/2004. The death of his sister caused his mother Rhonda to suffer a nervous breakdown rendering her unable to care for Ramseur. He was sent to foster care where he was beaten and abused. PSR ¶49. Ramseur's father was only in his life sporadically. Both of Ramseur's parents spent time in prison. When Rhonda was able to again care for Ramseur and his sister De'Oni, they lived in a neighborhood in Yonkers plagued by drugs and violence. Ramseur grew up poor sometimes lacking necessities. He remembers going to bed hungry and even living without

1

electricity at times. Struggles at home were coupled with struggles at school as Ramseur had learning disabilities and needed an individualized education plan (IEP) from an early age. Ultimately, Ramseur's trouble learning, and behavioral problems were better understood after his diagnosis of ADHD, PTSD, Oppositional Defiant Disorder, Intellectual Disability and anxiety disorders. Ramseur's IQ of 66 is indicative of his intellectual impairment. For a detailed description of Ramseur's traumatic childhood, neurodevelopmental disorders, mitigating factors and prison program recommendations, please see Letter dated 12/20/2022 by Jennifer R. Wynn, Ph.D. **Exhibit A**.

A variety of factors including a lack of guidance, learning disabilities, child abuse, a drug and violence prone environment combined to lead Ramseur to seek refuge in the support of a gang. Ramseur's life in the street led to substance abuse which included heavy marijuana use, use of Percocet pills and "Lean," a syrup containing the opioid codeine and the antihistamine promethazine. Ramseur's downward trajectory gained momentum at the age of 16 when he earned his first ▮▮▮▮▮ in Yonkers. Shortly after ▮▮▮▮▮, Ramseur earned his first felony conviction for Assault. A sentence of 42 months in state prison effectively ended Ramseur's education and he remained incarcerated until he was released to parole in May of 2021. Only two months after being released to parole, Ramseur was arrested on July 16, 2021, in connection with the instant felon in possession of a firearm case. Ramseur has accepted responsibility for his crime and allocated during his plea allocution as follows:

> On July 16, 2021, in Yonkers, New York, I possessed a Glock 42 .380 caliber firearm. I knew at the time I possessed the firearm I had been previously convicted of a felony assault crime for which I was sentenced to a term of 42 months in prison. I knew possessing the firearm was illegal and wrong.

Ramseur has served approximately 17 months in the Westchester County Jail in Valhalla, N.Y. While he has had behavioral and disciplinary problems at the jail, he has acknowledged his mistakes and communicated to counsel his understanding that much of his acting out is attributable to, among other things, his lack of maturity. He has articulated his intention to turn his life around from a negative to a positive direction. **Exhibit B**. Dr. Wynn makes clear in her report that Ramseur's behavior is contingent on consistent taking of medication including 15mg of Remeron daily and regular therapeutic counseling.

### III.   RECOMMENDATION OF PROBATION

Probation recommends a sentence of 46 months. This sentence would be a sentence greater than necessary to satisfy the purposes of sentencing. Ramseur pleaded guilty to a single count under 18 USC §922(g)(1) which does not carry a mandatory minimum prison sentence. A 46-month sentence would constitute a sentence at the top of the Guidelines range. Probation did not have the benefit of Dr. Wynn's report prior to making a top of the Guidelines recommendation. A sentence at the top of the Guidelines is not warranted here given the depth of mitigation evidence described in Dr. Wynn's report and in the PSR as well.

IV.     **OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT (PSR)**

There is a typographical error in PSR ¶40, line two says "a criminal history score of nine" nine should be changed to eight. This has no effect on the applicable Criminal History Category.

Concerning PSR ¶56 Ramseur's family moved to ███████████████ in 2006 according to Rhonda Ramseur.

V.      **THE STATUTORY FACTORS**

The sentencing statute, 18 USC §3553(a) sets forth the factors "to be considered in imposing a sentence." Since the Supreme Court decision in *U.S. v. Booker*, 543 U.S. 220 (2005), the United States Sentencing Guidelines are no longer mandatory and now are only advisory. The Guidelines may be a starting point for federal sentencing courts, but in the post-*Booker* world, the Guidelines are merely one of various factors to be considered before imposition of sentence. *U.S. v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Moreover, the parsimony clause of §3553(a) requires a sentencing court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)…" The parsimony clause dictates that in the event a sentencing court concludes that two sentences equally serve the statutory purposes of §3553(a), the court cannot, consistent with the parsimony clause, impose the higher sentence. *U.S. v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006). "The court, in determining the particular sentence to be imposed, shall consider" seven enumerated factors:

*(1) The nature and circumstances of the offense and the history and characteristics of the defendant*

**Nature and Circumstances of Offense**

In Yonkers, on July 16, 2021, Ramseur illegally possessed a firearm with one round in the chamber. After receiving a report of menacing, police observed Ramseur run away from police, discard a firearm on the sidewalk which led to Ramseur's arrest and recovery of the firearm. Ramseur was on parole at the time for a felony assault case for which he served a 42-month state prison sentence. He has admitted his guilt of being a felon in possession of the Glock 42 .380 caliber firearm. The offense is a firearms offense and is a serious offense.

**History and Characteristics of Defendant**

The murder of Ramseur's sister, being placed in foster care, lack of guidance, substance abuse, intellectual impairment, suffering from ADHD, PTSD and trying to survive in the violent streets of Yonkers, do not excuse Ramseur's criminal conduct. These mitigating factors, however, do provide context and reason to consider a below Guidelines sentence.

*(2) The need for the sentence imposed*

A sentence of less than 37 months along with three years of Supervised Release would: reflect the seriousness of the offense, promote respect for the law, provide just punishment for

his crimes for which mitigation exists, afford adequate deterrence, specifically to Ramseur who has been and will continue to be incarcerated after sentence, and generally to the public which will receive a clear signal that illegal possession of a firearm in New York will be met with significant prison time, protect the public from further crimes of the defendant, and would "provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner".

*(3) The kinds of sentences available*

A prison sentence which accounts for the extant mitigating factors is warranted. A term of supervised release would serve as an insurance policy against future recidivism and would foster Ramseur's successful transition from prison to law-abiding life. Supervised release specifically could ensure that Ramseur maintains employment, abstains from using illegal drugs, participates in mental health counseling, and stays away from gang activity in the streets.

*(4) The Guidelines Sentence Range*

The Guidelines range is 37-46 months. The purposes of sentencing can be satisfied by a sentence of less than 37 months. A below Guidelines sentence is appropriate for Ramseur, a young defendant with intellectual impairment, mental health problems, and a difficult upbringing marked by a lack of guidance in a difficult environment at home, at school and in the streets.

*(5) Pertinent policy statements by Sentence Commission*

Counsel is not aware of any relevant policy statements by the Sentence Commission that would impact the instant sentence.

*(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct*

A sentence of less than 37 months would not cause any unwarranted sentence disparities. A search of the United States Sentence Commission Interactive Data Analyzer reveals that for year 2021 for all circuits, 73.1% of defendants convicted of firearms offenses with a primary Guideline of 2K2.1 in Criminal History Category IV received sentences of 59 months or less. Specifically, 23.4% received sentences of 24 months or less while 49.7% received sentences between 24 and 59 months. https://ida.ussc.gov/analytics/saw.dll?Dashboard. In the 2d Circuit for 2021, 64.2% of defendants convicted of firearms offenses with a primary Guideline of 2K2.1 in Criminal History Category IV received sentences between 24 and 59 months.

*(7) The need to provide restitution to any victims of the offense*

Restitution is not an issue in this felon in possession of a firearm case.

## VI. CONCLUSION

For the reasons stated herein, in Dr. Wynn's report, and in the factual portion of the PSR, Ramseur requests a sentence of less than 37 months, along with three years of Supervised Release with special conditions of outpatient mental health and substance abuse treatment, and a $100 special assessment, which would be a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in the statute. §3553(a)(2). Ramseur requests a recommendation in the Judgment that he be designated to a BOP facility as close as possible to Yonkers, New York which has the BOP programs recommended by Dr. Wynn: Bureau Rehabilitation and Values Enhancement (BRAVE) program and The SKILLS program.

Respectfully submitted,

Daniel A. Hochheiser

Cc: AUSA Stephanie Simon